631 So.2d 698 (1994)
Joseph STELLY, et ux., Plaintiffs-Appellants,
v.
OVERHEAD DOOR CO. OF BATON ROUGE, et al., Defendants-Appellees.
No. 93-278.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
*699 Patrick Craig Morrow Sr., James Steven Gates, Opelousas, for Joseph Stelly, et ux.
Charles A. Schutte Jr., Baton Rouge, Cyd Sheree Page, Lafayette, for Overhead Door Co. of Baton Rouge, et al.
H. Douglas Hunter, Opelousas, for Elvin Ortego and United Parcel Services, Inc.
Before GUIDRY, DOUCET, KNOLL and SAUNDERS, JJ., and BERTRAND, J. Pro Tem.
GUIDRY, Judge.
This is a tort action by an employee against his employer for personal injury caused by an alleged defect in the work premises. The fact scenario involves an employer-lessee who leased the work premises from a third party-lessor, and contractually assumed liability under La.R.S. 9:3221 for defects in the premises. The single issue on appeal is whether the employer, under this fact scenario, remains statutorily immune from tort under La.R.S. 23:1032, when an employee is injured by a premise defect. The trial court concluded that the employer remains statutorily immune and dismissed plaintiff's tort suit against his employer. We affirm.

FACTS
The plaintiff, Joseph Stelly, was a mechanic at the United Parcel Service (UPS) service center in Opelousas. The service center building was leased to UPS by its owner, Elvin Ortego. In the lease agreement, UPS assumed the liability of the owner as contemplated in La.R.S. 9:3221.[1] The building was equipped with overhead rolling doors manufactured by Overhead Door Corporation and installed and maintained by Overhead Door Company of Baton Rouge. On December 16, 1987, Stelly was injured while operating one of the overhead doors. Initially, Stelly filed a claim for worker's compensation benefits against UPS and filed suit in state district court against Ortego and the two Overhead Door companies. This latter suit was later under the theory that UPS had contractually assumed the building owner's liability. UPS then moved for summary judgment, asserting it was statutorily immune from non-intentional *700 torts under La.R.S. 23:1032.[2] The trial court's granting of that motion forms the basis for this appeal.

OPINION
In arguing for a reversal of the trial court's judgment, appellants urge that when an employer leases immovable property and assumes the landowner-lessor's responsibility for premise defects pursuant to La.R.S. 9:3221, the employer may be held liable both as employer for worker's compensation and in tort when the employee is injured at the work premises by reason of a defect in those premises. We disagree and affirm the trial court's dismissal of plaintiff's tort action.
Over the years Louisiana courts have consistently refused to recognize the tort liability of employers under any dual capacity theory or doctrine. This consistent refusal is founded on the basic premise that the Worker's Compensation Act constitutes a compromise between the rights of employers and the rights of employees. Employers pay benefits under the act to an injured employee even when the employer is guilty of no actual fault. To offset the economic impact of this rule, employers, under no circumstances, should be held liable for damages other than compensation benefits, even if the employer is guilty of fault and to do otherwise offends the fundamental principles behind this legislative compromise.
Pursuant to this well recognized concept, there is no reported case in this state where an employee has been allowed recovery under a dual capacity theory or doctrine other than the case of Ducote v. Albert, 521 So.2d 399 (La.1988). The facts of Ducote, supra, are clearly distinguishable from those present in the instant suit and do not warrant a recognition of liability of the employer under a dual capacity theory. Ducote, supra, involved a suit by an employee against the company's physician for medical malpractice. The company doctor claimed immunity under La.R.S. 23:1032. Our Supreme Court, in rejecting the defendant-physician's claim of immunity, reasoned as follows:
Compensation represents a compromise between the employer and the employee in which each party surrenders certain advantages in order to gain others. The employer gives up the immunity he would enjoy under tort law if he were not at fault; the employee gives up the right to full compensation for the right to collect some compensation for any injury sustained on the job. W. Malone and A. Johnson, "Worker's Compensation Law and Practice," 13 La. Civil Law Treatise § 32, at 40 (2nd Ed.1980). Similarly, fellow workers are given immunity when they injure a co-worker on the job. La.R.S. 23:1032. Just as workplace accidents in general often occur without fault and are an inevitable risk of the workplace, so also do many accidents involving fellow workers occur without fault. Co-employee immunity from civil liability is also based on a compromise of rights. Workers benefit by exchanging the possibility of full tort recovery against co-employees for the certainty of worker's compensation benefits; they also gain immunity from suit for the potential situation where they negligently injure a co-employee.
These considerations do not apply to the malpractice of a company doctor. When a company doctor aggravates injuries suffered previously by an employee, it is not an inevitable risk inherent in the production process. The same risk would exist if the employee sought private treatment away from the workplace. We see no reason why a doctor should be able to acquire the shelter of immunity "by the simple expedient of joining the company's fringebenefit program or changing the form of his compensation from fee-for-service to fixed retainer." Jenkins, supra, at 680. The result would be an irrational patchwork where "some malpractitioners are immune from suit while others are not, depending on the arrangements worked out with their employers." Id.

*701 One final consideration indicates the correctness of our decision that a company doctor is not immune from civil liability for his malpractice in a case such as this. The same policy reasons which prompted the legislature to exclude independent contractors from coverage under the Louisiana Worker's Compensation Law mandate that we hold company doctors liable for their malpractice against company employees.
On the other hand, our courts have, over the years, consistently refused to allow delictual recovery by an employee against the employer under a dual capacity theory. In White v. Naquin, 500 So.2d 436 (La.App. 1st Cir.1986), the court held that a school board could not be held liable both as employer for compensation and in tort as custodian of the minor student causing injury to the school board employee. The many cases cited in White involve varying fact scenarios wherein the dual capacity doctrine was urged and denied. In Deagracias v. Chandler, 551 So.2d 25 (La.App. 4th Cir.1989), an employer was sought to be held responsible under a product liability theory when the employee was injured while operating a backhoe bucket manufactured by the employer. In that case, our brethren of the Fourth Circuit denied recovery. Finally, in the recent case of Roberts v. Orpheum Corporation, 610 So.2d 1097 (La.App. 4th Cir.1992), writ denied, 616 So.2d 682 (La.1993), an employee injured in an elevator accident brought a tort suit against his employer-lessee of the building who assumed responsibility for the leased premises. The facts present in Roberts, supra, are indistinguishable from those present in the instant case. In Roberts, supra, the court, in rejecting the plaintiff-employee's argument for recognition of the employer's liability under a dual capacity theory or doctrine, stated as follows:
It is undisputed that the Symphony is Roberts' employer. Under Louisiana law, La.Rev.Stat.Ann. § 23:1031 (West 1985), appellant's exclusive remedy is a claim for worker's compensation. The Louisiana Worker's Compensation Law was enacted as a compromise between the employer and the employee in a workplace where accidents are inevitable. Thereby, each party has surrendered certain rights to gain others. The employer has given up immunity under tort law to which he would be entitled if he were not at fault; the employee has given up the right to full compensation in order to collect some compensation for any injury sustained on the job. Ducote v. Albert, 521 So.2d 399, 403 (La.1988).
However, appellant insists that his claim against the Symphony is not based upon the employer's direct commission of a tort, but rather its contractual assumption of the liability of the owner of the building. In that regard, appellant suggests an application by analogy of the "dual capacity doctrine" which was adopted by our Supreme Court in the case of Ducote v. Albert. Id. at 400. Relying on this "dual capacity doctrine," the Ducote Court concluded that a company doctor is not immune from medical malpractice tort liability under the Louisiana Worker's Compensation Law. The Court reasoned that the considerations underlying the compromise inherent in worker's compensation did not apply to the malpractice of a company doctor. In addition, the Court noted that it is not an inevitable risk in the production process for a company doctor to aggravate injuries previously suffered by the employee and that the principal did not have control over the means by which the doctor's work is accomplished. Id. at 403. Such reasoning does not compel an extension of the "dual capacity doctrine" to the case under consideration.
The risk of harm in the workplace was precisely the same whether the employer was the owner or the lessee of the premises. Furthermore, this employer specifically had control over the cause of injury. And, had the Symphony not transferred ownership of the premises to the Orpheum Corporation less than four (4) months earlier, a claim of strict liability would not have been available to Roberts against the property owner, his employer.
There is no right to sue, except as provided by statute. Furthermore, since the contract between the lessor and the lessee was entered into before the potential tort claim arose, the employee had no property *702 right to a claim for damages. Section 9:3221 does not deny due process to the employee, Roberts, in this case. Fontan v. Estopinal, 529 So.2d 1330, 1333 (La.App. 5th Cir.1988), writ denied 533 So.2d 17 (La.1988).
(footnote omitted)
We fully agree with the court's reasoning in Roberts, supra, finding its rationale forceful and entirely consistent with prior jurisprudence on the same subject matter.
Finally, we observe that the "dual capacity theory or doctrine" sought to be applied to the employer in this case was specifically and categorically rejected during the 1989 legislative session. By Act 454 of 1989, effective January 1, 1990), La.R.S. 23:1032 A was amended to provide in part as follows:
... The exclusive remedy is exclusive of all claims, including any claims that might arise against his employer ... under any dual capacity theory or doctrine. (emphasis added)
Although Stelly was injured on December 16, 1987, prior to the effective date of Act 454 of 1989, considering the consistency of the jurisprudence in this area prior to the enactment of Act 454 of 1989, we believe that this act can and should be applied retroactively as interpretive legislation. St. Paul Fire & Marine Insurance Company v. E.R. Smith, Jr. d/b/a E.R. Smith Electrical Contractor, et al., 609 So.2d 809 (La.1992).
For these reasons, the judgment of the trial court is affirmed. Plaintiffs-appellants are cast with all costs of this appeal.
AFFIRMED.
KNOLL, J., dissents and assigns reasons.
SAUNDERS, J., dissents for the reasons assigned by KNOLL, J.
KNOLL, Judge, dissenting.
For the following reasons, I respectfully dissent. The majority fails to recognize the difference between liability that is statutorily imposed and that which is contractually assumed. The majority persuasively argues that the dual capacity doctrine has been rejected by Louisiana courts. Unfortunately, dual capacity is simply not the issue in the case sub judice.
A review of the cases cited by the majority reveals that dual capacity involves the situation where the law imposes liability on an employer in some capacity other than his status as employer. For example, in Wright v. Moore, 380 So.2d 172 (La.App. 1st Cir. 1979), writ denied, 382 So.2d 164 (La.1980), an employee of the Department of Health and Human Resources (DHHR) was injured while a passenger in a state owned vehicle driven by a fellow DHHR employee. The First Circuit held that where the State is immune from tort in its capacity as an employer through DHHR, the State cannot be held liable in its other capacity as custodian of the state roadways through DOTD. These capacities arise out of legal duties imposed by law and should not be confused with contractual liabilities assumed by the parties.
It has been long held that statutory immunity precludes a nonemployer defendant from seeking legal contribution from an employer partially responsible for the worker's injuries. However, it is equally clear that there is no law preventing private employers from contractually agreeing to indemnify third persons.[1] See Berninger v. Georgia-Pacific Corp., 582 So.2d 266 (La.App. 1 Cir.1991), citing Malone & Johnson, Louisiana Civil Law Treatise, Worker's Compensation, sec. 374, p. 223. There is no question that the policy behind statutory immunity does not prevent employers from contractually waiving their immunity from contribution. Therefore, there is absolutely no reason for this court to interpret statutory immunity as protecting the employer when that employer contractually assumes the liability a lessor would otherwise have to the worker. The majority's holding allows the employer to reap the benefits of assuming the lessor's liability (presumably lower rental rates), to *703 deny the worker his cause of action against the lessor and finally, the entire time, to avail himself of the protective shield of statutory immunity. I find this result unconscionable.
The foundation of the worker's compensation system is a compromise between the employer and employee in which each party surrenders certain advantages in order to gain others. W. Malone and A. Johnson, Louisiana Civil Law Treatise, Worker's Compensation, sec. 32, p. 40. Because of this, the courts must exercise great caution in interpreting statutes which will fundamentally affect this delicate balance between the interests of labor and those of industry. This decision, in effect, allows the employer to sell off the worker's cause of action in exchange for lower rent and demands no concession from the employer in return. By skewing the balance so carefully drawn by the legislature, the majority violates the most basic principle underlying the worker's compensation system.
NOTES
[1] La.R.S. 9:3221 provides: "The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time".
[2] La.R.S. 23:1032 provides in pertinent part: "The rights and remedies herein granted to an employee or his dependent on account of an injury, ... for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, ... against his employer, ... for said injury, ...".
[1] However, this may not be true when a public body is indemnifying third parties. See LSA-R.S. 38:2216(G).