640 So.2d 804 (1994)
James A. HOLBROOK, Jr., et ux., Plaintiffs-Appellants,
v.
Mose HOLLIDAY, et al., Defendants-Appellees.
No. 93-1639.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1994.
*806 Louis D. Bufkin, John Fitzgerald Willis, Lake Charles, for James A. Holbrook Jr., et ux.
Robert Samuel Dampf, Lake Charles, for Mose Holliday, et al.
Before KNOLL, THIBODEAUX and SAUNDERS, JJ.
THIBODEAUX, Judge.
This is an appeal by the plaintiffs, James A. Holbrook, Jr. and his wife, Kathleen Holbrook, who are the insureds of defendant, State Farm Mutual Automobile Insurance Company, from the trial court's grant of State Farm's motion for summary judgment. The Holbrooks sued State Farm to recover on their un/underinsured motorist (UM) coverage. The trial court concluded that Mrs. Holbrook validly rejected UM coverage and dismissed their claim against State Farm.
The Holbrooks appeal from that final judgment. We reverse and remand.

ISSUES
The Holbrooks have asserted four assignments of error which may be condensed into two primary issues: (1) whether the form utilized by State Farm is legally sufficient to effect a valid rejection by an insured, and (2) whether genuine issues of material facts exist such that summary judgment is inappropriate.

FACTS
The Holbrooks owned a 1982 Cadillac which had coverage for uninsured motorist on its policy of insurance. Because they were going to sell it, they decided to maintain liability insurance coverage and signed an Acknowledgment of UM Coverage Selection or Rejection form on which Mrs. Holbrook rejected UM coverage to lower their premium charge. She admits signing the form (appended to this opinion) on September 3, 1987. She did not sign any other rejection. They then purchased a 1989 GMC pickup truck. A rejection of UM coverage or change of vehicle form for the 1989 vehicle was not filled out.
On August 22, 1990, an accident occurred involving the 1989 vehicle. The Holbrooks filed a claim against State Farm under the UM provisions of their policy. After State Farm denied the claim, the Holbrooks filed suit. State Farm's successful motion for summary judgment was predicated on the nonexistence of UM coverage because of the signed rejection on the 1982 Cadillac.

LAW AND DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the trial judge's consideration of whether a summary judgment is appropriate. Thus, we give no deference to the trial court's decision. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991).
As set forth in La.Code Civ.P. art. 966(A), a plaintiff or a defendant in the principal or any incidental action, with or without supporting affidavits, may move for summary judgment in his favor for all or part of the relief for which has been prayed. Further, the mover is entitled to judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with supporting affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B); Durrosseau v. Century 21 Flavin Realty, Inc., 594 So.2d 1036 (La.App. 3d Cir.1992).
*807 Because the burden of establishing that no material factual issue exists is on the mover, inferences to be drawn from the underlying facts contained in the record must be viewed in the light most favorable to the party opposing the motion. Schroeder, supra. If the supporting documents presented by the mover are not sufficient to resolve all material fact issues, summary judgment must be denied. Durrosseau, supra. Only if the supporting documents of the mover are sufficient does that burden shift to the opposing party to present evidence that material facts are still at issue. At this point, the opposing party may no longer rest on the allegations and denials contained in his pleadings and must present evidence of a material fact issue. Id. Any doubt is resolved against the granting of the summary judgment and in favor of a trial on the merits to resolve disputed facts. Chaisson v. Domingue, 372 So.2d 1225 (La.1979). Summary judgment is seldom appropriate when there is a question relating to subjective facts such as intent, knowledge, motive, malice or good faith. Durrosseau, supra; Penalber v. Blount, 550 So.2d 577 (La.1989).
La.R.S. 22:1406(D)(1)(a)(i-ii) provides that uninsured motorist coverage exists in amounts not less than the limits of bodily injury liability unless an insured rejects in writing the coverage or selects lower limits. The clear purpose of the statute is to promote the recovery of damages for innocent victims of automobile accidents when the tortfeasor is either uninsured or underinsured. This purpose is accomplished by making UM coverage available for the victim's benefit as primary protection against the tortfeasor not adequately insured. Uhrich v. National Fire Ins. Co., 569 So.2d 1062 (La.App. 3d Cir.1990), writ denied, 572 So.2d 96 (1991). The statute is to be liberally construed, such that statutory exceptions to the UM coverage requirements are interpreted strictly. Tugwell v. State Farm Insurance Co., 609 So.2d 195 (La.1992). The burden of proving that any named insured rejected, in writing, UM coverage equal to the bodily injury liability limits or selected lower limits is on the insurer. Id.
The Holbrooks claim that the rejection form is ineffective because it does not provide the insured with the three options required by the Louisiana Supreme Court in Tugwell, supra. Tugwell noted that:
"... a valid rejection or selection of lower limits must be in writing and signed by the named insured or his legal representative. (Citations omitted). Further, the insurer must place the insured in a position to make an informed rejection of UM coverage. In other words, the form used by the insurance company must give the applicant the opportunity to make a `meaningful selection' from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage."
Id. at 197.
Because the statute automatically provides for UM coverage equal to the bodily injury liability limits, absent a rejection of UM coverage or selection of lower limits in writing, the customer possesses UM coverage as a matter of law. In other words, the policyholder does not have to do an affirmative act; that is, indicate in any manner their choice for UM coverage equal to the bodily injury liability limits of the policy. If the Holbrooks had done nothing on the form, UM coverage would have been automatically provided. Thus, although Tugwell and the statute provide for three options, only two of those options, the rejection of UM coverage and the selection of UM coverage with limits lower than the policy's bodily injury liability limits, require an affirmative act on the part of the policyholder.
We find that State Farm's Acknowledgment of UM Coverage Selection or Rejection form does not comply with the statutory and jurisprudential requirements allowing an insured to make an informed decision as to the rejection of UM coverage where it does not list each option as Tugwell mandates.
This panel respectfully recognizes that a contrary result was reached in Allen v. State Farm Mutual Automobile Insurance Co., 617 So.2d 1308 (La.App. 3d Cir.1993). The form in Allen and the form in the present *808 case are identical. The panel in Allen stated that:
"[t]he form used by State Farm for the rejection or selection of lower limits of UM coverages uses both boxes and blanks. The form acknowledges the right of the insured to UM coverage in amounts not less than the limits of bodily injury liability insurance and the boxes allow an insured to either reject UM coverage completely or to exercise his/her right to select limits lower than those selected for bodily injury liability."
Id. at 1311.
The Allen opinion misinterpreted the acknowledgment language of the form. On page 1311 of Allen, supra, the court declared that "[t]he form acknowledges the right of the insured to UM coverage in amounts not less than the limits of bodily injury liability." However, the actual language is less than clear as to the insured's right to the statutorily required UM coverage where it informs the insured that he or she "acknowledges" and "agrees" that he or she has the right "to be provided with" UM coverage equal to bodily injury liability limits. We find that the insured acknowledging and agreeing with the insurer that he or she has the right to be provided with statutory UM coverage is not tantamount to the Tugwell requirement of placing the insured in a position to make a "meaningful" selection from his or her options provided by law.
The insurer is required to place the insured in a position to make an informed rejection of UM coverage. Tugwell, 609 So.2d at 197. Again, an "informed" rejection of UM coverage is defined by the Tugwell court as one where the form used by the insurance company gives the applicant the opportunity to make a "meaningful selection" from his/her options that are provided by the statute.
We find that the State Farm form did not give Mrs. Holbrook the opportunity to make a meaningful selection from the options available to her as provided to her by statute. The rejection form only detailed two of the options available to the Holbrooks. Although the language of the form is in ordinary-sized print and in terms easily understood by the layman, it states that the insured has "the right to be provided with" UM coverage in amounts equal to bodily injury liability limits. The language "to be provided" implies that the customer is not automatically provided with UM coverage regardless of whether he or she would be required to pay higher premiums, but that the customer has to do something to receive what he or she is entitled to by law. Furthermore, the form is entitled, "Louisiana Uninsured Motor Vehicle Coverage" when it is really a form used, not to obtain UM coverage, but only to select lower limits or reject UM coverage.
Mrs. Holbrook admits that she signed the rejection of UM coverage portion of the form. However, her testimony and affidavit revealed also that she was unaware of how rejection of UM coverage on the 1982 Cadillac would affect UM coverage on vehicles purchased after the Cadillac. She thought that the rejection applied only to the 1982 Cadillac and not to vehicles purchased as replacements for the 1982 Cadillac. In Roger v. Estate of Moulton, 513 So.2d 1126 (La. 1987), our supreme court held that the insured must expressly set forth that UM coverage is rejected as of a particular policy, as of a specific date. We find that there is a question of fact with respect to whether or not Mrs. Holbrook knew that she was rejecting UM coverage on the 1989 vehicle when she rejected it on the 1982 vehicle.
We are aware of dictum in Henson v. Safeco Insurance Companies, 585 So.2d 534, 539 (La.1991) which expresses the view that it is a rejection and not an acceptance which requires an affirmative act. But, both Henson and Tugwell require that any exclusion from coverage be clear, unmistakable, and unambiguous. See, Henson, supra at 538; Tugwell, supra 609 So.2d at 197. To effect a valid exclusion, the form itself must be clear, unmistakable and unambiguous for an affirmative act to be informed and intelligently made.
In Young v. Shelter Ins. Co., 604 So.2d 199 (La.App. 2d Cir), writ denied, 607 So.2d 559 (1992), the issue was whether the insured's admitted signature on the rejection form reflected an informed affirmative choice rather *809 than the insurer's attempt to force the insured to alter standard choices made for him by the insurer. In Young, supra, the insurer argued that the court was confined to the "four corners" of the application in determining whether the insured validly rejected or selected lower limits of UM coverage. The second circuit rejected that argument, holding that there was no legislative intent to prevent the insured from introducing evidence that he did not affirmatively reject UM coverage.
In her affidavit, Mrs. Holbrook stated that with the exception of the signature blank, she did not fill out the UM rejection form. This situation is similar to the factual circumstances of Henson, supra where the insured simply signed an application form. Here, a separate UM form was used but Henson's conclusion "that the evidence of the insured's merely signing such an application form without his marking the rejection himself or initialing the mark made by the agent, was insufficient to establish an affirmative rejection of UM coverage." Id. 585 So.2d at 535 is equally applicable here.
Furthermore, if Mrs. Holbrook did not know that her signature on the form, rejecting UM coverage on the 1982 Cadillac in 1987, would also be a rejection of UM coverage on the 1989 truck acquired later, her signature on a form rejecting such coverage would not amount to an affirmative choice. This issue should be resolved at a trial on the merits. The likelihood that a party will be unable to prove his/her allegations upon trial on the merits does not constitute a basis for rendering summary judgment. Hopkins v. Sovereign Fire & Casualty Insurance Co., 626 So.2d 880 (La.App. 3d Cir.1993); King v. Stroke, 602 So.2d 219 (La.App. 3d Cir.), writ denied, 607 So.2d 558 (La.1992).
Given the oft-stated favorable public policy and jurisprudentially expressed liberal rules governing UM coverage, it seems that it would be a simple task to draft UM selection/rejection forms to state clearly, unambiguously and unmistakably the three options mandated by La.R.S. 22:1406(D)(1)(a)(i-ii) and Tugwell, supra. A form may be easily written to say:
I select Uninsured Motor Vehicle Coverage in the same amount as the limits of my automobile bodily injury liability;
I select Uninsured Motor Vehicle Coverage with lower limits of $______/$______;
I reject (or, do not want) Uninsured Motor Vehicle Coverage.
In the above context, the sagacity expressed in Bays v. Estate of Zeringue, 584 So.2d 715, 723 (La.App. 5th Cir.), writ denied, 590 So.2d 79 (1991) is instructive:
"[W]e feel constrained to make the following observation. The Louisiana statutes mandating, and automatically writing U.M. coverage into insurance policies issued in this state unless specifically rejected in writing, and the Louisiana Supreme Court's continued liberal interpretation of these laws, have been published in the statute books and the Southern Reporter for several years now. In addition, the Louisiana jurisprudence construing an ambiguous contract against he who drafted it and ambiguous insurance policies in favor of the insured is legion and certainly well known to all who are in the insurance business. In view of these observations, if certain insurance companies continue to write vague and ambiguous policies, and disregard the requirements of the waiver of U.M. coverage, as clearly enunciated in the statutes and court opinions, they have no one to blame but themselves for unfavorable judgments and opinions regarding interpretation of U.M. policy provisions."

CONCLUSION
For the foregoing reasons, we find that the trial court erred in granting State Farm's motion for summary judgment. This case is remanded to the trial court for further proceedings. Costs of the appeal are taxed against State Farm.
REVERSED AND REMANDED.
*810